# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Robert L. Garrett,

      Plaintiff,

v.

      Case No. 2:04-CV-00582
      JUDGE SMITH
      Magistrate Judge Abel

Trans Union, L.L.C., *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiff Robert L. Garrett ("Plaintiff") brings this action against Defendants Citifinancial Mortgage Co., Inc. ("Citifinancial") and Trans Union, L.L.C. ("Trans Union") (collectively "Defendants").  Plaintiff claims that Defendants have violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.  Defendant Cititfinancial has moved for summary judgment. (Doc. 51).  Plaintiff has filed an amended motion to strike requesting this Court to strike the Affidavit of Joseph Barbone. (Doc. 66).  Defendant Citifinancial has filed a motion to strike requesting this Court to strike portions of the Affidavit of Plaintiff Robert L. Garrett. (Doc. 61). Defendant Trans Union has moved for summary judgment. (Doc. 52).  For the reasons that follow, the Court **GRANTS** the Defendant Citifinancial's Motion for Summary Judgment, **DENIES** Plaintiff's Amended Motion to Strike, **GRANTS in part and DENIES in part** the Defendant Citifinancial's Motion to Strike the Affidavit of Plaintiff Robert Garrett, and **GRANTS** the Defendant Trans Union's Motion for Summary Judgment.

## I.  FACTUAL BACKGROUND

Plaintiff is an individual resident of the State of Ohio.  Plaintiff filed this action on July 7, 2004 seeking damages based on Defendants' alleged violations of the FCRA.

In May or June of 2000, Plaintiff took out a mortgage loan on his house for approximately $100,000 in exchange for a mortgage on his property.  In June, 2001, Plaintiff and his wife filed a Chapter 7 bankruptcy.  Prior to the bankruptcy, Plaintiff was already 120 days past due on his payments to Citifinancial.  During the bankruptcy, Plaintiff reached an agreement with Citifinancial regarding a deed in lieu of foreclosure instead of putting the mortgage in bankruptcy.  Under this agreement, Citifinancial agreed not to pursue collection of the monies owed by Plaintiff in exchange for the deed from Plaintiff's property.  Plaintiff continued to reside in the house for an additional year until October or November of 2002.   In November, 2002, Plaintiff signed and delivered to Citifinancial a Deed in Lieu of Foreclosure which was subsequently signed and filed by Citifinancial in November, 2002.

Citifinancial sold Plaintiff's house pursuant to the deed provided by Plaintiff.  The sale price was $32,445 short of the amount Plaintiff would have owed Citifinancial on the promissory note, absent the deed in lieu of foreclosure agreement.  Because of the deed in lieu of foreclosure agreement, Citifinancial did not attempt to collect the deficiency.

Plaintiff, following the bankruptcy, was unable to obtain a mortgage for another house and consequently put the loan for his next house in his father's name.  Plaintiff admits the reason he could not get a loan at that time was because of his bankruptcy.  In November, 2003, Plaintiff claims that he was denied credit for the purchase of a car and was told that it was because of Citifinancial's entry on his credit report.  Plaintiff then called Citifinancial and talked to a Greg Reed.  Mr. Reed confirmed that Plaintiff owed nothing and faxed a letter that same day which stated that Citifinancial accepted a deed in lieu of foreclosure and Plaintiff had no further

obligation in regards to this account.

Plaintiff claims he was subsequently denied credit by Bank One in February of 2004 and Provident Bank in March of 2004.  At that point in time, Plaintiff had still not disputed the entry on the credit report to any credit reporting agency ("CRA").  Defendant Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. §§ 1681a-1681v.  Plaintiff then submitted the Citifinancial letter to Doug Spiker at Bank One, but was still denied credit. Plaintiff also sent this Citifinancial letter to Defendant Trans Union, but Trans Union informed Plaintiff it would not accept the Citifinancial letter.

On March 29, 2004, Plaintiff formally notified Trans Union that he was disputing the Citifinancial tradeline on his credit report.  On April 6, 2004, Trans Union sent Plaintiff a letter advising that it was "unable to accept the documentation [he] sent" because Trans Union needed a "current letter from Citifinancial stating that the balance was zero." Trans Union further advised Plaintiff in this letter that "Trans Union will contact the source of the disputed information to advise them of your dispute.  We will ask them to verify the accuracy of the reported information.  When the investigation is completed, you will receive written response and/or copy of your updated report to notify you of the results."  Trans Union sent Citifinancial notice of the dispute on April 7, 2004.  The next day, Citifinancial reported the results of its investigation to Trans Union with an automated consumer dispute verification ("ACDV").  The ACDV submitted by Citifinancial reported that the remaining "amount owed" was $32,400, but that the entry should read "Profit Loss Write Off" for that amount.  Trans Union then reported that the $32,400 was "Charged Off As Bad Debt."  On April 8, 2004, Trans Union forwarded Plaintiff the results of its investigation.  Trans Union also sent Plaintiff a current copy of his Trans Union credit file, evidencing the confirmations of balance due and updates.  Trans Union

3

also advised Plaintiff of his right to add a consumer statement to his file and to have revised reports sent to those who had received reports prior to changes or the inclusion of the consumer statement. In July of 2004, the Citifinancial Account was updated by Citifinancial to reflect a zero balance.

On July 7, 2004, Plaintiff filed this lawsuit against Citifinancial and Trans Union. Essentially, Plaintiff alleged that Citifinancial violated the FCRA when, in April of 2004, Citifinancial reported to Trans Union the amount owed as a "Profit Loss Write Off."  Plaintiff alleges Citifinancial was required to report a "zero" amount owed.  Plaintiff alleges that Trans Union violated the FCRA when it negligently and willfully failed to conduct a proper reinvestigation of his dispute of the Citifinancial account and by failing to follow reasonable procedures to assure maximum possible accuracy of the information it reported on him as required by the FCRA.

It is uncontroverted that following Plaintiff's dispute letter to Trans Union dated March 29, 2004, and Citifinancial's investigation, Plaintiff was never denied credit based upon the alleged inaccurate report in April, 2004.  Between April 2, 2004 and July, 2004, Trans Union did not distribute Plaintiff's credit report to any third party.  In fact, Plaintiff did not apply for credit until after March 29, 2005, when Plaintiff applied for and was approved for financing for his house and a credit card.

## II.  SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings,

4

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

As a preliminary matter, this Court will first address the pending motions to strike. Next, the Court will consider Defendant Citifinancial's motion for summary judgment. Finally, the Court will consider Defendant Trans Union's motion for summary judgment.

#### A.    Motions to Strike

Federal Rule of Civil Procedure 56(e) sets forth three mandatory requirements for affidavits that are used in support of, or in opposition to, a motion for summary judgment.  The rule requires that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P.56(e).  "An affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp. 2d 948, 954 (S.D.Ohio 2000); *quoting Collazos Cruz v. United States*, No. 96-5452, 1997 U.S. App. LEXIS 17196, 1997 WL 377037 at *2 (6th Cir. July 3, 1997).  The Court, utilizing the foregoing standards as guidance, now turns to the pending motions to strike.

### 1.      Citifinancial's Motion to Strike Affidavit of Robert Garrett (Doc. 61)

Defendant Citifinancial argues that the Court should not consider various portions of the affidavit Plaintiff filed in response to the motion for summary judgment because said portions of the affidavit: (1) directly contradict the sworn statements Plaintiff gave in his deposition about the circumstances surrounding the transfer of the deed; (2) contain inadmissible hearsay; and (3) constitute inadmissible legal conclusions and expert opinion.

### a.      Contradicts Deposition Testimony

Citifinancial asserts that this Court should not consider the portions of Plaintiff's affidavit that directly contradict his deposition testimony.  Specifically, Citifinancial references statements 12, 13, 17, 24 and 37 of the affidavit which essentially assert that the at-issue Citifinancial account was included in the September 21, 2001 bankruptcy discharge, and therefore, the account should have been reported as "Included in Bankruptcy."  In contrast, Citifinancial points out that several portions of Plaintiff's deposition testimony make clear that Plaintiff chose to grant a Deed in Lieu of Foreclosure to Citifinancial *instead* of surrendering the

property in the bankruptcy.  Based upon prevailing Sixth Circuit precedent, the Court agrees that these contradictory statements should be stricken.

The Sixth Circuit has consistently found that "[a] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgement has been made, that essentially contradicts his earlier deposition testimony." *Penny v. Untied Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997); and *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *accord Aereal, S.R.I. v. PCC Airfoils, LLC*, 448 F.3d 899 (6th Cir. 2006); *Lockard v. Generals Motors Corp.*, 52 F. Appx. 782, 788-89 (6th Cir. 2002); *Smith v. Consilidated Rail Corp.*, 1996 WL 366283, at *4 (6th Cir. 1996); and *Rosinski v. Electronic Data Systems Corp.*, 1991 WL 105747, at *6 (6th Cir.1991).

Plaintiff argues that there is no contradiction and first cites to a portion of his deposition testimony where Plaintiff states that, to his knowledge, he understood the mortgage was discharged. (Pl.'s Depo. at 56)  Plaintiff's reliance, however, is misplaced because Plaintiff corrected and clarified his testimony:

> Q:    *So is your testimony today that the mortgage account was discharged in bankruptcy correct?*
> A:    *My understanding would be . . . if I couldn't make arrangements with Citifinancial, if we couldn't come to an agreement, it would be discharged.  The agreement that we came to was do a deed in lieu.*

(*Id.* at 57-58).  Plaintiff later reinforced his deposition testimony that the mortgage was not included in the bankruptcy:

> A:    *. . . I don't know what their [Citifinancial's] thinking was okay?  But I know that they knew what my options were.  **I could do a deed in lieu** and them have something to sell and get money, **or I could go bankruptcy** and the house would be mine and they got nothing. . . . If I had to put it in bankruptcy, I could have walked away with the house free and clear and they'd have got nothing.  But I didn't want that.  I said, look, we can do this.  If this is what you want to do, I'm willing to do this.*

8

(*Id*. at 222-23) (emphasis added).

Next, Plaintiff seeks to rely on the fact that Plaintiff filed his intention to surrender his real estate encumbered by the Citifinancial mortgage.  The Court finds that such reliance is misplaced and that Plaintiff has failed to offer any evidence that the property was actually surrendered to the trustee within thirty days which was required under 11 U.S.C. § 521 (2001). To the contrary, Plaintiff's testimony reveals that Plaintiff did not surrender the property, but instead continued to possess the property for another year following the bankruptcy, and then, after discharge, he negotiated a Deed in Lieu of Foreclosure with Citifinancial.

Based upon the foregoing, this Court finds that statements in Plaintiff's affidavit are in direct contradiction to Plaintiff's deposition testimony and also inconsistent with Plaintiff's admission that he continued to live in the property for over a year after the bankruptcy was discharged, until the Deed in Lieu of Foreclosure was finally granted.   Accordingly, this Court will not permit Plaintiff to create an issue of fact as to whether the subject mortgage was discharged in bankruptcy or should have been reported as  "Included in Bankruptcy."  Thus, the statements in paragraphs 12, 13, 17, 24 and 37 of Plaintiff's Affidavit are stricken.

> **b.      Inadmissable Hearsay**

Citifinancial claims that portions of Plaintiff's affidavit contain inadmissible hearsay and such portions should be stricken from the record.  Specifically, Citifinancial claims the following statements are inadmissible because they qualify as "statements" which are either oral or written assertions offered into evidence to prove the truth of the matter asserted:

> 22.      *When I applied for financing at McHugh Jeep at Zanesville Chevrolet I learned that there was an unpaid account being reported by Citifinancial.*

> 23.      *One of the dealers called me at home to ask why I had a mortgage at a*

> *different address.  He said I owed money on a mortgage to Citifinancial*
> *and I couldn't get financing for a car.*

. . .

> 31.     *I was denied both the car loan and a mortgage.  I was told that my credit*
> *report showed I still owed money to Citifinancial.*

. . .

Defendants correctly point out that this Court should not consider hearsay on a motion

for summary judgment. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) ("Hearsay evidence

cannot be considered on a motion for summary judgment.").  Plaintiff, however, asserts that

these statements were not offered to prove the truth of the matter asserted, but rather to show his

then existing state of mind and motive, and thus are hearsay exceptions pursuant to Fed. R. Evid.

803(3).  The Court agrees with Defendant Citifinancial that these statements cannot be utilized

by Plaintiff to prove that he was denied credit based upon the entry from Citifinancial.  The

statements can, however, be considered by the Court to show Plaintiff's then existing state of

mind and motive.  Accordingly, the Court denies Defendants' request to strike paragraphs 22, 23

and 31 of Plaintiff's affidavit from the record.

### c.     Inadmissible Legal Conclusions and Expert Opinions

Finally, Citifinancial asserts that portions of Plaintiff's affidavit constitute inadmissible

legal conclusions and expert opinions.  Specifically, Plaintiff cites to statements 37, 39, 42, 43,

46, 47, 48, 49, 51, 53 and 55 of Plaintiff's affidavit which Citifinancial characterizes as an

expression of "Plaintiff's opinion that once Citifinancial investigated and changed Plaintiff's

credit entry, he would not be approved for credit, or Plaintiff is attempting to offer an expert

opinion that the entry was not accurate." Citifinancial's Mot. to Strike at 7.

Plaintiff argues that the at-issue statements address Plaintiff's explanation of how his

credit file as reported by Citifinancial and disseminated by Trans Union, has affected his life and

10

that these statements are rationally based upon Mr. Garrett's perception of his condition.

Under Fed.R.Civ.P. 56(e) "affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible evidence." Further, "[i]t is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits" submitted for summary judgment. *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002). In this instance, the Court finds that certain averments made by Plaintiff in his affidavit do, in fact, express impermissible conclusions of law and opinion. For example, in paragraphs 37, 39, 47 and 55 of Plaintiff's affidavit, Plaintiff avers that the Citifinancial account entry on his credit report was inaccurate. In addition, in paragraphs 39, 42, 43, 46, 47, 48, 49, 51, 53 of Plaintiff's affidavit, Plaintiff opines both explicitly and implicitly that he would have been denied credit if he were to apply. As Plaintiff points out, intermingled with these impermissible statements, are statements illustrating Plaintiff's perception of his condition. Accordingly, to the extent portions of paragraphs 37, 39, 42, 43, 46, 47, 48, 49, 51, 53 and 55 of Plaintiff's affidavit contain improper legal conclusions regarding whether or not Plaintiff would be approved for credit or whether or not the Citifinancial entry on Plaintiff's credit report was accurate, the Court will not, in ruling on the motions before it, rely upon these portions.

**2.      Plaintiff's Motion to Strike Affidavit of Joseph Barbone (Doc. 66)**

Plaintiff argues that the Court should not consider the affidavit of Joseph Barbone filed in support of Defendant Citifinancial's motion for summary judgment because "Citifinancial has never identified any witness, or even any person with any knowledge in this case." Pl. Mot. to Strike at 2. Citifinancial argues, and this Court agrees, that Plaintiff's motion is meritless and should be denied because (1) there has been no failure to disclose pursuant to Rule 26(a)(1); (2) there is no prejudice to Plaintiff whether the witness is listed as a "Citifinancial representative"

11

or "Citifinancial representative Joe Barbone" and Plaintiff articulates no such prejudice; (3) the failure of Plaintiff to depose a Citifinancial representative (or any other witness) is solely because of Plaintiff's own lack of diligence; or (4) Plaintiff was permitted to depose this witness beyond the discovery cut-off, but for whatever reason refused to do so; and (5) even if there was a discovery violation, the violation is harmless because Plaintiff always knew that a representative of Citifinancial would testify. Ctifinancial's Memo in Opp. at 1-2.

Plaintiff has also argued that this Court should strike the Barbone affidavit because it is not based on personal knowledge. Pl. Mot. to Strike at 9-11.

Rule 56(e) precludes a witness from testifying to matters he is incapable of giving reliable statements about.  Witnesses must make statements based on their knowledge and "statements made on information and belief" are precluded. *Reddy v. Good Samaritan Hospital*, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000).  There is a presumption that corporate officers have personal knowledge of acts of their corporation. *Moore's Federal Practice* § 56.14[1][c] (3d ed 1999).

In the instant case, Barbone does not have and does not claim to have specific personal knowledge of the facts surrounding Plaintiff's allegations.  Barbone's testimony is offered based on his personal knowledge of company procedure, guidelines, review of documents, and experience in the lending industry.  Additionally, Barbone has extensive experience in the lending industry and consequently has knowledge of the meaning of the credit report to a lender.

Based upon the foregoing, this Court finds that Barbone's testimony meets the standards set forth in Rule 56(e), and therefore, denies Plaintiff's request to strike Barbone's affidavit from the record.

Having resolved these preliminary procedural issues, the Court now turns to the

substance of Plaintiff's FCRA claims.

**B.     Defendant Citifinancial's Motion for Summary Judgment (Doc. 51)**

Plaintiff alleges Defendant Citifinancial violated the Fair Credit Reporting Act,15 U.S.C. §

1681s-2(b), by failing to conduct a reasonable investigation of Plaintiff's dispute and failing to

properly, accurately and completely correct its reporting as a result of the dispute. (Pl's. Memo in

Opp. at 4).  Specifically, Plaintiff claims Citifinancial committed the following FCRA violations:

> (a) continuing to publish the Citifinancial representation within Mr. Garrett's credit
>
> file with TransUnion without also including a notation that this debt was disputed;
>
> (b) failing to fully and properly investigate the [sic] Garrett's dispute of the
>
> Citifinancial representation;
>
> (c) failing to review all relevant information regarding the same;
>
> (d) failing to accurately respond to Trans Union; and
>
> (e) by failing to correctly report results of an accurate investigation of every
>
> reporting agency.

Compl. at 5.

Defendant Citifinancial claims it is entitled to summary judgment for the following reasons:

(1) the Citifinancial entry on the credit report was "technically accurate;" (2) there is no private

cause of action under 15 U.S.C. § 1681s-2(a), for failure to accurately report information; (3)

Citifinancial was under no duty to conduct a reasonable investigation until April 7, 2004; (4)

Plaintiff cannot show that any damages arose during the relevant time following proper notification

to Trans Union of his dispute; and (5) Plaintiff cannot show that Citifinancial willfully failed to

comply with the requirements under the FCRA.  (Citifinancial's Mot. for Summ. J. at 2).

The Court rejects the second and third reasons advanced by Citifinancial.  With respect to

13

the second argument, Plaintiff has admitted that there is no private cause of action under 15 U.S.C. § 1681s-2(a) and has not asserted one to the contrary.  Instead, Plaintiff has alleged Citifinancial failed to fulfill the duties of furnishers set forth in § 1681s-2(b).  With respect to the third argument, Defendant again misunderstands Plaintiff's claims.  In fact, the parties are in agreement that Citifinancial was under no duty to conduct a reasonable investigation until April 7, 2004.  (*See* Pl's. Memo. in Opp. at 23).  This date is relevant because it is when Citifinancial (the furnisher) first received notice under § 1681i(a)(2), which is notice from a consumer reporting agency (here, Trans Union) thereby triggering the duties of furnishers set forth in § 1681s-2(b).  Thus, Plaintiff claims that Citifinancial violated its § 1681s-2(b) statutory duties *after* April 7, 2004, not before as Citifinancial's third argument in support of summary judgment seems to suggest.

Citifinancial's duties under the FCRA, as triggered by the notice of Trans Union on April 7, 2004, are set forth in § 1681s-2(b):

> (b) Duties of furnishers of information upon notice of dispute
>   (1) In general
>       After receiving notice pursuant to section 1681i(a)(2) of this title of a  dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
>           (**A**) conduct an investigation with respect to the disputed information;
>
>           (**B**) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
>           (**C**) report the results of the investigation to the consumer reporting agency;
>
>           (**D**) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
>           (**E**) if an item of information disputed by a consumer is found to be

inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

> **(i)** modify that item of information;

> **(ii)** delete that item of information; or

> **(iii)** permanently block the reporting of that item of information.

(2) Deadline

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

Thus, after being informed of a dispute by a CRA, a furnisher such as Citifinancial must conduct an investigation, report the results to the CRA and, if there is a finding of inaccurate information, inform all other CRAs as well.

As noted *supra*, Citifinancial maintains that the information it reported regarding Plaintiff's account was technically accurate, and therefore, it did not violate this or any other provision of the FCRA. Alternatively, Citifinancial claims that, even if there is a question of fact regarding Citifinancial's provision of inaccurate information or failure to conduct a reasonable investigation, summary judgment would still be appropriate because Plaintiff cannot show that any damages arose during the relevant time periods. This Court agrees that both of these arguments warrant summary judgment in Citifinancial's favor. In addition, this Court finds that even if Plaintiff could prove that Citifinancial violated the FCRA, Plaintiff cannot show willful noncompliance, and therefore, is not entitled to punitive damages.

1.      **Technical Accuracy**

Defendant Citifinancial argues Plaintiff's FCRA claims must fail as Plaintiff's credit report is technically accurate.  Plaintiff responds that "[w]hile some of the claims require proof of inaccuracy, many provisions of the FCRA establish process rights which are not dependant upon such evidence."  (Pl's. Memo. in Opp. at 19-20).  Additionally and alternatively, Plaintiff argues that the evidence demonstrates, at the very least, that there is a question of fact as to whether or not the information Citifinancial reported was accurate.

While it is unclear whether a showing of inaccuracy is required for §1681s-2(b) liability,[2] Plaintiff, other than simply stating that Citifinancial failed to fully and properly investigate his dispute, points to nothing in the record beyond the alleged inaccuracy of the report to show that Citifinancial's investigation somehow fell short of §1681s-2(b)'s investigation requirements.  Rather, Plaintiff's argument seems to entirely rely on its alternative claim that the evidence demonstrates, at the very least, that there is a question of fact as to whether or not the information reported was accurate.  Thus, the Court turns its attention to the Citifinancial entry on Plaintiff's credit report after April 7, 2004, the date Citifinancial had a duty to investigate Plaintiff's dispute.

After the operative date, Plaintiff's credit report, for the Citifinancial entry, showed a balance of $32,445[3] was owed and that the balance was a "Profit and loss write off" and

---

[2]The Court does recognize, however, that damages would almost be impossible to prove absent a showing of inaccuracy. *Salie v. American Exp. Travel Related Services Co., Inc.,* 134 F.3d 372, 1997 WL 809956, *3 (6th Cir.1997).

[3]As set forth in the Fact Section, *supra*, when Citifinancial sold Plaintiff's house pursuant to the deed provided by Plaintiff, $32,445 was the amount the sale price fell short of the amount Plaintiff would have owed Citifinancial on the promissory note absent the deed in lieu of foreclosure agreement.

16

"charged as bad debt." Plaintiff points out that this information reported by Trans Union was a result of Citifinancial's reporting of a standard code and number in a format titled METRO. Citifinancial, after its investigation conducted pursuant to §1681s-2(b), changed the code it reported to Trans Union to code "97" which reads: "Unpaid balance reported as a loss by credit grantor (charge-off)." (*See* Metro 2 Guide). Plaintiff claims that "[t]he proper reporting of this status was a Metro 2 code 89." (Pl's. Memo in Opp. at 22). Code "89" reads "Deed received in lieu of foreclosure on a defaulted mortgage." *See* Metro 2 guide. While the Court agrees that Code "89" is more specific, that does not mean that Code "97", which is less specific, is inaccurate.

The Sixth Circuit has held that information on a credit report is accurate under the FCRA if it is "technically accurate" or "accurate on its face" even if it might be "misleading or incomplete in some respect." *Dickens v. Trans Union,* 18 Fed.Apx. 315, 318 (6th Cir. 2001); *citing Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991). In *Dickens,* the Sixth Circuit found that the at-issue entry on the credit report was "technically accurate" and noted that the plaintiff had failed to provide "evidence that the notation was mis-perceived by [the lender's] credit department . . . ." *Id.* at 318.

In the present case, Citifinancial maintains, and this Court agrees, that under either code, lenders reading the credit report would understand that Citifinancial is not attempting to collect any money from Plaintiff. Like the *Dickens* plaintiff, Plaintiff has failed to provide evidence that lenders reviewing Plaintiff's post-April 7, 2004 credit report mis-perceived the Citifinancial entry to Plaintiff's detriment. In fact, as set forth in the facts, *supra,* it is undisputed that post-April 7, 2004, Plaintiff was never denied credit based upon his credit report. While the phrases "Profit and loss write off" and "charged as bad debt" are less specific than "Deed received in lieu

17

of foreclosure on a defaulted mortgage," they are technically accurate – Citifinancial, in accepting the deed in lieu of foreclosure, made a profit loss write off and charged off the remaining debt.

Accordingly, based upon the foregoing, the Court finds that summary judgment in Citifinancial's favor is appropriate.  Nonetheless, the Court continues its analysis to Citifinancial's damages argument as an alternative basis for granting summary judgment.

### 2. Actual Damages

Citifinancial argues that, even assuming Plaintiff is able to present a question of fact regarding a violation of § 1681s-(b), summary judgment is still appropriate because Plaintiff is not entitled to damages under the FCRA as a matter of law.  This Court agrees.

Plaintiff admits that after April 7, 2004, he was never denied credit.  Nonetheless, Plaintiff claims he suffered "actual damages" in the form of emotional distress and lost opportunities.

While "actual damages" may include emotional distress, because emotional distress damages are so easy to manufacture, courts have imposed a strict standard to be applied for them to be recoverable. *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004); *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001); *Reed v. Experian Information Solutions*, 321 F.Supp.2d 1108, 1115 (D.Minn. 2004).  Accordingly, generalized claims of emotional injury are not enough to establish damages. *See Schmit v. Trans Union LLC*, 2004 WL 785098, * (N.D.Ill.2004) and *Lee Experian Information Solutions,* 2003 WL 22287351, *14-15 (N.D.Ill.2003).  When the plaintiff's testimony is the only proof of emotional damages, he or she must explain the circumstances of the injury in reasonable detail and cannot simply rely on conclusory statements. *Bach v. First Union National Bank*, 149 Fed.Appx. 354, 361 (6th Cir.

18

2005); *Sarver*, 390 F.3d at 971. Here, the Court finds that Plaintiff's allegations of emotional distress are impermissibly conclusory.

Even if general claims of emotional injury were enough to establish damages, "[w]ithout a causal relationship between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) *citing Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 473 (2d Cir. 1995); *Cahlin v. General Motors Acceptance Corp.*, 936 F.3d 1151, 1160-61 (11th Cir.1991).

In *Casella*, as in the instant case, the plaintiff claimed emotional damages sustained as a result of erroneous information contained in his credit report. 56 F.3d at 474. In support of this claim, the *Casella* plaintiff, again like Plaintiff in the instant action, offered his own affidavit and that of his companion "explaining at length the worry, anxiety, and depression he felt while having to deal with his credit report . . . ." *Id.* The *Casella* plaintiff, again like Plaintiff here, presented no evidence that any third party was provided his credit report, but the *Casella* plaintiff nonetheless claimed he was entitled to emotional distress damages simply because he *knew* of an inaccurate and potentially damaging item report. *Id.* at 474-75. The *Casella* Court rejected this argument and held that the plaintiff was not entitled to emotional distress damages where he was unable to prove any third-party learned of the erroneous information. *Id.* In addition, the *Casella* Court found it proper to deny emotional distress damages where the plaintiff had failed to present any evidence that the alleged damages were proximately caused by any inaccuracy. *Id.* Thus, in the instant case, even assuming Plaintiff's general claims of emotional distress were sufficient, this Court, like the *Casella* Court, finds that Plaintiff is not entitled to emotional distress damages because Plaintiff cannot show causation. Plaintiff cannot

19

present evidence that any third party was provided his credit report during the operative dates.[4]
Further, Plaintiff has offered no facts proving that his alleged damages were actually caused by
any inaccuracies contained in his credit report rather than being caused by the stress of going
bankrupt or losing his home and business.[5]

Likewise, this Court rejects Plaintiff's attempts to recover an award of "lost opportunity"
damages.  Because Plaintiff was not denied credit after April 7, 2004, he seeks to recover
damages based upon his speculation that he would have been unable to obtain credit had he
sought it.  Plaintiff cites no authority supporting an award of lost opportunity damages.  The
*Casella* Court rejected plaintiff's attempts to recover damages for his claims of lost opportunity
to take advantage of low mortgage interest rates and low housing prices prevailing during the
operative period where the plaintiff had refrained from making any credit applications. 56 F.3d
at 475.  The Court explained that, "in the absence of any evidence that [plaintiff] made an offer
to purchase property or applied for a home mortgage, the 'lost opportunity' damages he alleged
were too speculative" and plaintiff "failed to meet his burden of demonstrating any damages
resulting from being deprived of a loan." *Id.* at 475-76, *citing Ladner v. Equifax Credit
Information Services,* 828 F.Supp. 427, 432 (S.D.Miss. 1993).  In the instant case, this Court,
like the *Casella* Court, finds that Plaintiff's alleged "lost opportunity" damages are too
speculative.

---

[4]*See* discussion in III.C.1, *infra*.

[5]*Accord*, *Enwonwu v. Trans Union, L.L.C.*, 364 F.Supp.2d 1361, (N.D.Ga 2005) (The
burden of proving causation "remains with the Plaintiff at all times and never shifts to the
Defendant."); *See also, Reed*, 321 F.Supp.2d at 113 (requiring plaintiff to show that "the
inaccurate entry was a 'substantial factor' that brought about the denial of credit," and finding
that erroneous notation could not have been a substantial factor in the denial because plaintiff
was not qualified for the loan).

Accordingly, based upon the foregoing, the Court finds that summary judgment in Citifinancial's favor is appropriate because Plaintiff is not entitled to damages under the FCRA as a matter of law.

### 3.      FCRA § 1681n: Punitive Damages

The Court finds that even if Plaintiff could prove that Citifinancial violated the FCRA, that Plaintiff cannot show willful noncompliance, and therefore, is not entitled to punitive damages.  15 U.S.C. § 1681n provides that "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." To state a willful noncompliance claim under § 1681s-2(b), Plaintiff carries the heavy burden of showing that Citifinancial knowingly and intentionally committed an act in conscious disregard for the rights of others. *See Casella*, 56 F.3d at 476; *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002) (The term "willfully," as used in the FCRA, imports the requirement that the defendant know his or her conduct is unlawful); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998).  In addition, only defendants who engaged in willful misrepresentations or concealments have committed a willful violation of the FCRA and are subject to liability under § 1681n.  *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993); *See also*, *Cushman v. TU Corp.*, 115 F.3d 220, 227 (3d Cir. 1997).  Failure to adequately re-investigate or promptly correct or delete information after notice does not constitute willfulness.  *See Stevenson, supra*; *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1983); *Casella, supra.*

In the instant case, there is no genuine issue of material fact as to willful violations.  It is undisputed that Citifinancial investigated Plaintiff's credit report following the request from

Trans Union.  Plaintiff has offered no proof of a willful violation beyond his accusations that

Citifinancial continued to report inaccurate information following its investigation and also his

conclusory allegations that Citifinancial reported this information "willfuly."  Thus, Plaintiff has

not met his burden of showing that Citifinancial knowingly and intentionally committed an act in

conscious disregard for the rights of others. Accordingly, this Court finds that, as a matter of law,

even if Plaintiff could prove Citifinanical violated the FCRA, he is not entitled to punitive

damages under § 1681n.

**C.      Trans Union's Motion for Summary Judgement (Doc. 52)**

Plaintiff alleges that Defendant Trans Union violated the FCRA, § § 1681i(a) and

1681e(b).  Specifically, Plaintiff claims Trans Union violated § 1681i(a) "by failing to delete or

correct inaccurate information in [Plaintiff's] credit file after receiving actual notice of such

inaccuracies and conducting a reinvestigation by failing to maintain reasonable procedures with

which to filter and verify disputed information in [Plaintiff's] credit file, and by failing to

conduct a reasonable investigation." Compl. at 4.  Plaintiff claims that Trans Union violated §

1681e(b) "by failing to establish or follow reasonable procedures to assure maximum possible

accuracy in the preparation of the credit reports and credit files they published and maintained

concerning [Plaintiff]." *Id.*  Finally, Plaintiff claims that he is entitled to punitive damages under

§ 1681n because these violations were "willful."

**1.      FCRA § 1681e(b): Reasonable Procedures**

Trans Union argues it is entitled to summary judgment on Plaintiff's § 1681e(b) claims

because Plaintiff has no evidence of an inaccurate consumer report, insufficient evidence of

damages, and no evidence of proximate cause. (Trans Union's Reply at 16). This Court agrees.

The FCRA § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To sustain his FCRA claims, Plaintiff must prove the well established elements set forth in *Bryant v. TRW, Inc.,* 487 F.Supp. 1234, 1238 (E.D.Mich.1980), *aff'd* 689 F.2d 72 (6th Cir.1982) and *Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962, 967 (S.D.Ohio 1983).  That is, Plaintiff must show:

1. Defendant was negligent in that it failed to follow reasonable procedures to assure maximum possible accuracy of information about plaintiff;
2. Defendant reported inaccurate information about plaintiff;
3. Plaintiff was injured; and
4. Defendants's negligence was the proximate cause such injury.

"A showing of inaccuracy in a credit report provided to third-parties is an essential element of a claim under the Fair Credit Reporting Act." *Spence v. TRW, Inc.*, 92 F.3d 382 (6th Cir. 1996); *Guimond v. Trans Union*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Henson v. CSC Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994); *Cahlin*, 936 F.2d at 1156.

The Court finds Plaintiff has failed to prove its burden with respect to the accuracy requirement because (1) the information in the credit report was "technically accurate" (*see* discussion *supra* at III.B.1); and, even if it were inaccurate, Trans Union did not furnish any credit reports during the operative dates.[6]  Plaintiff argues that Trans Union did furnish credit reports to creditors seeking to make promotional offers of credit (e.g. 'pre-approved credit cards)

---

[6]The parties are in agreement that Trans Union was under no duty to conduct a reasonable investigation until April, 2004, when it received notice of Plaintiff's dispute.

and also reports to Plaintiff's existing insurance company and two of his creditors as "Account Review" consumer reports.  Plaintiff has not produced any such reports.  With respect to the "promotional inquiries," Trans Union only provides limited information such that the full report is not provided.  Further, with "promotional inquiries," companies receive any credit histories so any allegedly inaccurate Citifinancial information was not transmitted.  Similarly, in "account review" inquiries, companies only receive partial information for the limited purpose of review of that creditor's own account or other business with Plaintiff.  Regardless, it is uncontested that Plaintiff experienced no denials of credit and, in fact, offers of credit were made.

Accordingly, the Court finds that summary judgment in favor of Trans Union is appropriate with respect to Plaintiff's § 1681e(b) claims.

### 2.     FCRA § 1681i(a): Reinvestigation

Plaintiff claims Trans Union violated § 1681i(a) by continuing to report the allegedly inaccurate information after receiving the dispute letter from Plaintiff and by failing to conduct a reasonable reinvestigation procedure.  The Court disagrees.

> FCRA 15 U.S.C. § 1681i(a) states in relevant part:
>
> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the *current status* of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

(emphasis added).

The Court rejects Plaintiff's notion that Trans Union should have changed Plaintiff's credit report based upon the dispute letter Plaintiff sent.  The statute clearly requires Trans Union

24

to record the *current status* of the disputed information and Trans Union did so.  Indeed, as set

forth *supra*, the information reported was technically accurate.[7]  This Court agrees with the

opinion expressed in *Anderson v. Trans Union LLC*., 367 F.Supp.2d 1225, 1234 (W.D. Wis.

2005):

> [G]ood reason exists for the Act's failure to require a consumer reporting agency
> to accept representations made in a letter from a consumer advising of a dispute.
> Agencies have no mechanism for auditing the reliability and truthfulness of
> consumers.  Requiring them to accept and rely upon information in letters from
> consumers would be an invitation to fraud.  The Act takes this into account in
> direting agencies to '*review and consider'* the consumer's information, §
> 1681i(a), without requiring the agency to accept it as accurate.

The Court also rejects Plaintiff's argument that Trans Union, by relying on its ACDV

process, failed to conduct a sufficient  reinvestigation.  Trans Union forwarded an ACDV to

Citifinancial asking them to "verify all account information."  Ctitifinancial returned the ACDV

with changes, Trans Union modified the account information to reflect these changes, and Trans

Union subsequently sent Plaintiff the results of its reinvestigation along with a revised copy of

his Trans Union credit file.  Additionally, as required by § 1681i(b), Plaintiff was also advised

that if the "investigation has not resolved your dispute, you may add a 100 word consumer

---

[7] "Although a showing of inaccuracy is an essential element of a § 1681e(b) claim, *see Spence,* 92 F.3d at 382, it is unclear whether a showing of inaccuracy is required for § 1681i liability." *Dickens*, 18 Fed.Appx. at 318-19 *citing*, *Salei* v. American Exp. Travel Related Services Co., Inc., 134 F.3d 372, 1997 WL 809953, *3 (6th Cir. 1997) ("It is unclear whether [the credit reporting agency] could be liable for inadequate procedures in the absence of any inaccuracy on Sailei's report.  Even if a showing of inaccuracy is not a predicate to liability, damages would be almost impossible to prove without it . . . "); *but see Cahlin,* 936 F.2d at 1160 ("[A] section [1681i] claim is properly raised when a particular credit report contains a *factual deficiency or error* that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry.") (emphasis added); *Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824, 829 (E.D.N.Y. 1994) ("[I]f the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary.") (internal quotation marks omitted).

statement to your report."  Finally, pursuant to § 1681i(d), Trans Union advised Plaintiff the "if

there has been a change in your credit history resulting from our investigation, or if you add a

consumer statement, you may request that Trans Union send an updated report to those who

received your report within the last two years for employment purposes, or within the last year

for any other purpose."

The cases cited by Plaintiff to support its contention that Trans Union violated § 1681i(a)

stand for the proposition that, in some circumstances, § 1681i(a)'s duty to reinvestigate may

include a duty to go beyond the original source.  *Anderson*,, 367 F.Supp.2d at 1232 (no duty to

go beyond original source if the source can be expected to resolve the dispute and the source is a

reliable furnisher of credit information); *Bryant*, 689 F.2d at 78 (a consumer reporting agency

does not necessarily comply with § 1681e(b) by reporting in an accurate manner the information

it receives from creditor and each case must be judged on its own merits); *Cushman*, 115 F.3d at

225 (quoting *Henson v. CSC Credit Services*,  29 F.3d 280, 287 (7th Cir. 1997), "in order to fulfill

its obligations § 1681i(a) 'a credit reporting agency may be required, in certain circumstances, to

verify the accuracy of its initial source of information'").  In distinguishing the cases where

additional investigation beyond the furnisher was deemed to be appropriate, the court in

*Anderson* noted that those cases all included situations where the furnisher did not have the

information necessary to respond and could not be counted on to verify the information

provided:

> In Cushman, it was not enough for the defendant to find out that the cards had
> been issued; the consumers were not complaining that the cards had not been
> issued but that their cards were being used fraudulently.  In *Henson*, it was not
> enough to check the court record; the complaint was that the record was
> inaccurate.  In *Stevenson*, it was not enough to rely on the usual reinvestigation
> procedures when the complaint concerned fraud and there were many disputed

accounts.  In plaintiffs' case, however, the question is simply whether the plaintiffs are alive.  This is something the credit card issuer can be depended on to verify; it has the means of checking its cardholders' status and it certainly had the motivation to do so.

367 F.Supp.2d at 1233.

In the instant case, Citifinancial possessed the information needed to respond to the dispute and Plaintiff has failed to produce any evidence illustrating that Citifinancial was an unreliable source.[8]  Accordingly, the Court finds that Trans Union's reinvestigation of Plaintiff's dispute was sufficient under § 1681i(a), and therefore, summary judgment in favor of Trans Union is appropriate with respect to Plaintiff's § 1681i(a) claims.

### 3.    Actual Damages

Trans Union argues that, even assuming Plaintiff is able to present a question of fact regarding a violation of § 1681e(b) or § 1681i, summary judgment is still appropriate because Plaintiff is not entitled to damages under the FCRA as a matter of law.  This Court agrees.

As set forth above, Plaintiff admits that after April 7, 2004, he was never denied credit. Nonetheless, Plaintiff claims (as he did against Citifinancial) that he suffered "actual damages" in the form of emotional distress and lost opportunities.

This Court rejects Plaintiff's arguments that he suffered "actual damages" for the reasons set forth in III.B.3, *supra*.  Accordingly, the Court finds that summary judgment in Trans Union's favor is appropriate with respect to Plaintiff's § 1681e(b) and § 1681i claims because Plaintiff is not entitled to damages under the FCRA as a matter of law.

---

[8]An unreliable source has been defined as "one 'unlikely to lead to inaccurate credit reporting except in isolated incidences.'" *Anderson v. Trans Union LLC*, 345 F.Supp.2d 963, 972 (W.D. Wis. 2004) *quoting Henson*, 29 F.3d at 285.

**4.      FCRA § 1681n: Punitive Damages**

The Court finds that even if Plaintiff could prove that Trans Union violated the FCRA, that Plaintiff cannot show willful noncompliance, and therefore, is not entitled to punitive damages.  As discussed in Section III.B.3, *supra*, to recover punitive damages under § 1681n, Plaintiff carries the heavy burden of showing Trans Union knowingly and intentionally committed a violation of the FCRA in conscious disregard for the rights of others.  Plaintiff's arguments fall short of this heightened burden.  Failure to adequately re-investigate or promptly correct or delete information after notice does not constitute willfulness.  *See Stevenson, supra*; *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1983); *Casella, supra.*  Accordingly, this Court finds that, as a matter of law, even if Plaintiff could prove Trans Union violated the FCRA, he is not entitled to punitive damages under § 1681n.

## V.  CONCLUSION

Based on the foregoing, the Court **GRANTS** the Defendant Citifinancial's Motion for Summary Judgment (Doc. 51), **DENIES** Plaintiff's Amended Motion to Strike (Doc. 66), **GRANTS in part and DENIES in part** the Defendant Citifinancial's Motion to Strike Portions of the Affidavit of Plaintiff Robert Garrett (Doc. 61), and **GRANTS** the Defendant Trans Union's Motion for Summary Judgment (Doc. 52).  The Clerk shall enter a final judgment in this case, dismissing Plaintiff's federal claims with prejudice.

The Clerk shall remove Documents 51, 52, 61 and 66 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases.

28

**IT IS SO ORDERED.**

  /s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**